Good morning, Your Honors. Matt Campbell on behalf of Michael Painter. I will be attempting to reserve three minutes for rebuttal, and I would like to turn away from second-degree assault initially and to discuss our motion to suppress. The district court erroneously denied the motion to suppress. We do agree the district court correctly found that Arizona v. Gantt did not justify the search, authorized as a probable cause vehicle search. Instead, the district court relied essentially on three cases, United States v. Brown, United States v. $109,179 in U.S. currency, and primarily, I think, on New York v. Class. And for several reasons, we believe that the district court was incorrect in relying on those cases. As an initial matter, the district court largely ignored the Supreme Court's decision in United States v. Jones. And in United States v. Jones, the Supreme Court had essentially overturned a search warrant or, excuse me, had overturned a GPS tracking device that had been placed on a vehicle without a search warrant. And the primary issue in United States v. Jones was that the affixing of a GPS device was, in fact, a trespass. It was a trespass to effects. And the government in Jones had tried to argue that essentially under Katz, the only issue was whether there was a reasonable expectation of privacy in the location of the vehicle and essentially argued there was no such reasonable expectation of privacy in location. And therefore, the search seizure by affixing a GPS device was authorized. You will agree with me that that's the first time in so many, many years we started talking about trespass in Jones. I mean, I was on a case that was similar to Jones here in this circuit, and we didn't ever think about trespass. Nobody argued it. First time we had a trespass argument was in Jones, and Justice Scalia bought it. Why is it, whether you name it a trespass or whether you name it the other, which would be privacy, if you will, why does that change what the district court did in Brown or in Currency or in Classe? Well, I think the difference— You call it a trespass or you don't. Okay. Under either definition. I mean, if you look at Classe, they wanted paperwork. It was relevant to what they had to have. It wasn't something that was any more than just filling out the normal forms. And Classe said this is relevant. In Classe, the issue was whether the officer could look at the VIN number. I understand. And if we read Classe carefully, it goes through a fair amount of detail into the regulations that require that a VIN number be visible from the outside of the vehicle. So that's the thing up in the dashboard area? Correct, Your Honor. And also in the door? Correct. In fact, on older models, it was primarily in the door. Then subsequently, I believe in 1969, they changed it to be up on the dash. But the issue was that that is in Classe. It was mandated that the VIN number be in a certain location. It's mandated what the size of the VIN number must be. And it's mandated that it must be visible to somebody standing on the outside of the car at the left-hand side, the driver's side. And the Supreme Court in Classe specifically said we analogize the VIN number to the equivalent of the outside of the vehicle, not to items such as the trunk or the glove compartment. That's specifically, I'm paraphrasing, but that's specifically referenced in Classe, that a VIN number is distinct from the trunk or the glove compartment. So what we have here is admittedly, and we're under a de novo review. I'm not challenging the facts. We have an officer who went up to the car to enter the glove compartment. So under Classe, even if we accept that Classe is the only thing that matters, Classe distinguished its holding that you could look at a VIN number from a glove compartment. But in this case, it was an officer who had mandatory, if you will, regulation that they had to fill out this paperwork. The defendant was handcuffed and had a medical problem, and the glove compartment was open. It wasn't visible, and the officer simply went to the glove compartment to do what he mandatorily had to do. But I think that the problem that we have there is under that rationale, an officer could search any and all parts of an automobile under the guise of trying to find a registration. There would be no limiting principle to that. The limiting principle in Classe was built on the idea that a VIN number is required to be displayed and required to be visible from the outside of the vehicle. There's nothing in Classe that says one can search through a glove compartment or one can search through the trunk. Quite to the contrary, it distinguishes those areas. Well, if they'd have been able to just get this on the VIN number, Classe would have seemed to have said what it had to say in some part. But again, I'm trying to say to myself, can I suggest in this particular instance that based on the facts as set out by the district court, that somehow this officer violated the Fourth Amendment by simply looking in an open glove compartment to get a mandatory collision report when the person who had the automobile was handcuffed and had medical problems? I think clearly the answer is the officer cannot do that. What case do I find that says that? Well, it would be a radical departure to say that if an officer is required to do a certain task, that that officer is then authorized to conduct what is otherwise a warrantless and impermissible search. You just have good argument, so I can weigh that? Well, I think Classe stands for that itself. Oh, you think that's what Classe says? Classe itself says a VIN number is like the outside of a car, not like a glove compartment. It specifically makes that... We were just going to go to Brown. Yeah, what about Brown? That was a glove compartment. But there was a difference in the glove compartment situation there. There the driver of the car refused to produce the registration information or gave evasive answers as to who was the owner. Here that wasn't so. Here the record is silent. But Judge Smith mentioned the medical condition. Can we analogize the evasive answers given in Brown as to the ownership of the car and the refusal to produce the registration to the medical condition under which Painter was operating so that the officer can reasonably believe that he can't get the registration information from the driver and therefore has to look at it? Because the invasion, the intrusion in this case, Painter, is very slight. He moves the balloon that comes out, the restraint, to one side, which is very similar to moving the papers in Classe. But again, I think the argument would go that in Classe we have a situation where essentially the court is saying the officer is lawfully at the position that he is in when he observes the VIN number. It's sort of a plain view type of analysis. And what we have here is somebody who is admittedly going into the glove compartment, an area that Classe would say is not, is protected. In Brown they went into the glove compartment. What's the difference? Well, I think in Brown there's a problem regarding the trespassery nature of the search. What about the other case side by the district court was the $109,000 in currency in which the court basically said where you're looking, where you're needing to validate registration, you can do that on something less than probable cause or validate ownership. So where does that figure in? Well, I think factually the currency case is of limited value since the search at issue there is really putting a key into a lock as opposed to intruding into a glove compartment, which by definition is designed to keep items secret. Well, that would even be more intrusive to put a key in a lock than to take an open glove compartment and just say let me grab the registration. All you had to do was just push back the balloon that had popped out, and it's wide open. True, but at that point the officer I think is trespassing because the officer is intentionally conducting otherwise impermissibly warrantless search. He was trespassing by putting the key in the lock. Although his intent at that point was not to open the car. That's my major point. All right, thank you. I'll reserve my last second. All right. I will give it to you. May it please the Court. I'm James Gay. I represent the United States. Picking up on that suppression issue, Your Honors, I do believe that it's controlled by U.S.B. Brown, $109,000 currency case in class. It is a minimal intrusion that the officer had to do to complete his obligations under the mandatory traffic reporting condition. Why did he have to do that? Why didn't he ask Mr. Painter to produce the registration first? The record is silent on that, but I believe it can be. I mean, that's what happened in Brown. They asked Brown, and he gave evasive answers. But shouldn't the rule be that if you can procure the registration, you don't intrude into the car? Well, I think in the facts we have before us in this case, we know that we could not have procured the registration through Painter. He was handcuffed, and they had a medical issue on the side of the street. They could unhandcuff him and say, Get me the registration. Well, he was also. Then we get more into a Gantt issue, which I realize the government did not cross appeal on that issue. But we would get more into a Gantt issue because he was under lawful arrest for an observed traffic offense, an eluding offense that occurred in the officer's presence. Or he could give consent. The registration is in the glove compartment, but he wasn't asked about whether the government could intrude into his car. As counsel says, the record is silent on that, Your Honor. But I think under these facts, Brown, the currency case, and Kloss still allowed that minimal intrusion. And the intrusion was so minimal. And so the principle from the case would be as long as the glove compartment is open, the officer can go in there and rummage around? Well, in this instance, I don't think we even get to that point because all we have is an officer who, a disabled car in the middle of the road, had just been in a traffic accident, reached into the window, moved aside, and expended airbag. That's basically a different way of saying if you have an open glove compartment, it's open season. Well, it's actually largely, it's plain view, largely, in that instance. But it wasn't plain view. It wasn't just plain view. You had to move the airbag. You had to move the airbag. That would be a whole new definition of plain view. I mean, he created the plain view. As a latecomer to this case, as I entered my appearance about a week ago, I also would argue, the government did not argue, the government should have argued, there's also inevitable discovery here. That airbag would have been moved when that disabled car was pulled off to the side of the road. We didn't argue that. I'm not going to belabor that point. I do think this is a minimum. It's a traffic offense situation. It's a minimal, minimal, minimal intrusion. I think those cases cited by the government are right on point. This is not Jones. This is not even close to Jones. Jones is an intrusion into a vehicle. There's no traffic issue there. It's completely different than putting a GPS. Why don't you tell me what is the holding in this case, if we were to rule in favor of the government? The holding in this case is this is analogous to Brown. This is a very minimal intrusion that is lawful for the officer to do because the officer is executing his requirements under state law and mandatory requirements to complete a traffic citation. So as long as the officer needs to verify ownership? As long as the officer needs to verify ownership. Which is state law. Under state law. You don't have to ask the person. You could even, without asking, every time go to the glove compartment. In the facts of this case, that's certainly permissible. You have a handcuffed defendant experiencing a medical issue who just committed a crime in the officer's presence. Without getting too close to Gant. And I also would suggest, moving on to the other issue in this case, is the issue of the Johnson issue. And I rely on the able argument of my co-counsel from the Washington District of Washington. But the one thing I would point out about that case is I sit there. You kind of go to what you know. So as I sit and listen to how the Supreme Court in Washington State analyzes its second degree assault statute and uses that term means that we're hung up on. They've used the term means. Therefore, the defense essentially says we win. Is it not much like the federal statute, 18 U.S.C. 113? 113 says there's an assault. And here's the different ways you can be punished for assault. And there's eight or nine different provisions. If the Washington State Supreme Court, I believe, and the way they analyze that case, if they were looking at that federal statute, they would call those separate provisions of assault means. Here's different means of committing federal assault. This court would not. There's a different jury instruction for every subsection of those with different elements. Simply because the Washington State Supreme Court would look at a statute and use different terminology does not mean that the defense wins. Well, your argument seems pretty good. But I would have asked, and I'm glad my colleague did ask, it seems to me if I look at the jury instructions, the Washington Supreme Court very easily could have taken the second alternative in those jury instructions and said these are alternative crimes under the same heading. They didn't. Instead, it was absolutely the same. It was different means for the same statute, which cuts definitely against your argument. It does to some extent. I mean, because they've got a chance to do what you want to argue if they just take two. But they haven't had to look at it through this prism, this prism of Mathis and Johnson. And what I would say in these two Ishanushka Washington cases, we have— I'm having a tough time understanding how in the devil they would ever get to three if they take your argument as to two. And, I mean, they pass two. Your argument definitely fits in the second. There's no question it doesn't fit in the third. Well, that's what I would say in the facts of these two cases. Painter and Harrison, we have the only subsection in that statute charged is C. It's the use of a deadly weapon. So the only thing that could have been for a jury or before part of a plea discussion was pleading to those elements. While the Supreme Court in Washington calls them means, they are just like 18 U.S.C. 113 elements. That's what I would say on the Johnson issue. And I would also say, frankly, in this case, in Painter, the Johnson issue is also waived. The defendant had a valid plea waiver in this case. The district court went through that in detail with the defendant, and the defendant had a right to appeal the suppression issue, which we've addressed. The defendant had a right to appeal if he had been found to have been a career offender and or ACCA. Neither of those things occurred. So in this instance, we don't need Painter. We don't need to get to the Johnson issue. We don't need to get to the Mathis issue. The defendant waived it. There is no argument can be made in the record the defendant hasn't attempted to. There's no issue with the rule of love and colloquy. The court did not say he gets to appeal this issue. The sentence comports with the plea agreement. The court was very careful, and it says repeatedly at sentencing that this is a sentence, I'm bound by this, or I'm going to follow the 11C1C recommendation. I'm going to sentence you within the guideline range, and he did. And the sentence does not violate the law in any way. So for that reason, I don't think in Painter we even have to get to the Johnson issue. May I just ask you, I'm trying to refresh myself. Was that argument, was the waiver argument made in your brief? It was. Okay. It is, Your Honor. It is. I'm just re-looking again at your brief. That argument is made as an initial argument with regard to the Johnson issue. Thank you. So I have nothing further on Painter. Thank you. Do you want to address the waiver issue? I would like to, if I could have a minute. I'm looking at excerpt page 20, which is the plea agreement. And it clearly states that the appeal would be waived so long as the defendant is sentenced within the applicable guideline sentencing range. And because the Court erred in determining what the base offense level was, Mr. Painter was not sentenced within the applicable guideline range. This is the government's drafted plea agreement. It is to be interpreted liberally in favor of Mr. Painter, therefore. It was not the applicable guideline sentencing range that he was sentenced within. Therefore, there is no waiver. Had this said within the guideline range as determined by the Court, then the waiver might very well hold. But because it says applicable guideline range, it simply is not barred by the appeal waiver. I appreciate your argument. Do you have a good Washington case on that particular argument that goes along with your argument? I'm sorry, Your Honor, I'm not. A Washington State case about? Any case that you have that would get me to where you are. In regard to the plea waiver? Yes. Not off the top of my head, Your Honor. I'll be happy to submit a 20-year charge. You're just saying that it's a question of, well, I won't say semantics, but a question of the wording, that we should look to the wording of the waiver. Correct. And the wording of the waiver clearly states that in order for the waiver to apply, Mr. Painter must be sentenced within the applicable guideline sentencing range. And this is not the applicable guideline sentencing range. In fact, the applicable guideline sentencing range. I think we have your argument in mind then. Thank you very much. Case just argued of United States v. Painter is submitted.
judges: McKeown, Bea, N.R. Smith